# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

---

|  |  |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | : <br> : <br> : |
| Plaintiff, | : <br> : |
| v. | : **CASE NO. 2:14-cv-13902-MOB-MKM** <br> : |
| The Estate of VINCENT JAMES SAVIANO and PALMETTO INVESTMENTS, LLC, | : <br> : <br> : |
| Defendants, | : <br> : |

---

### ORDER FOR TEMPORARY RESTRAINING ORDER, OTHER EMERGENCY RELIEF, APPOINTMENT OF A RECEIVER, AND SETTING PRELIMINARY INJUNCTION HEARING

Plaintiff United States Securities and Exchange Commission (the "SEC" or "Commission") has filed a Motion for a Temporary Restraining Order and Other Emergency Relief and Appointment of a Receiver ("Motion") against Defendants the Estate of Vincent James Saviano (the "Saviano Estate") and Palmetto Investments, LLC ("Palmetto") (collectively the "Defendants"). The Court, having considered the Motion, the memorandum of law in support thereof, the declarations, exhibits and all other documents filed contemporaneously therewith; having reviewed the SEC's complaint, the Motion, the supporting memorandum of law, the exhibits and declarations; having considered the arguments of counsel; and having been fully advised of such in the premises, hereby finds pursuant to Rule 65 of the Federal Rules of Civil Procedure that notice could not be given because an executor has not yet been appointed for the Saviano Estate, and the registered agent, sole officer and owner of Palmetto Investments, LLC is deceased. The Court further finds as follows:

1.     This Court has subject matter jurisdiction over this case and there is good cause to believe it will have personal jurisdiction over Defendants, and the SEC is a proper party to bring this action seeking the relief sought in its complaint.

2.     The SEC has made a sufficient and proper showing and there is good cause to believe that it will ultimately succeed in establishing that Saviano and Palmetto engaged in transactions, practices and courses of business that violate the federal securities laws, as alleged in the complaint, including Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5], and Sections 206(1), (2) and (4) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-6(1), (2) and (4), and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

3.     There is good cause to believe that Defendants have obtained money or property from investors as a result of their securities laws violations alleged in the complaint.

4.     There is good cause to believe that unless frozen by Order of this Court, assets that otherwise could have been subject to an order of disgorgement pursuant to Section 20(d) of the Securities Act of 1933 [15 U.S.C. § 77t(d)], Section 21(d) of the Securities Exchange Act of 1934 [15 U.S.C. § 78u(d)], and Section 209(d) of the Investment Advisers Act of 1940 [15 U.S.C. § 80b-9(d)] could be dissipated, concealed, or transferred from the jurisdiction of this Court.

5.     An Order freezing assets in necessary to preserve the *status quo* and to protect this Court's ability to award equitable relief for the benefit of any investors who may have been harmed by Saviano and Palmetto's conduct.

6.     An accounting by the Defendants is appropriate.

7.      There is good cause to believe that it is necessary to preserve and maintain the business records of Defendants from destruction.

8.      Expedited discovery is appropriate to permit a prompt and fair preliminary injunction hearing.

9.      The appointment of a receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets of the Defendants that: (a) are attributable to funds derived from investors or clients of the Defendants; (b) are held in constructive trust for the Defendants; (c) were fraudulently transferred by the Defendants; and/or (d) may otherwise be includable as assets of the estates of the Defendant (collectively, the "Recoverable Assets").

10.      Therefore, the SEC's Motion should be, and is, granted as set forth more fully in Sections I through VI below.

## I.
## ASSET FREEZE

**IT IS HEREBY ORDERED** that until the expiration of this Order or as otherwise ordered by the Court:

A.

All funds and other assets held, managed or controlled, whether directly or indirectly, by Defendants are hereby frozen.

B.

Accordingly, Defendants, and any of their agents, servants, employees, attorneys, depositories, banks, and those persons in active concert or participation with any one or more of them, and each of them, who receive actual notice of this Order or of the terms of the asset freeze provisions contained herein, by personal service, mail, facsimile transmission, email, or otherwise, are hereby restrained from, directly or indirectly, transferring, selling, encumbering,

3

receiving, concealing, changing, pledging, hypothecating, assigning, liquidating, incurring debt upon, or otherwise disposing of, or withdrawing, any funds, assets or other property (including money, real or personal property, securities, chose in action or any other form of asset or property of any kind whatsoever).

      C.

The asset freeze articulated herein extends to accounts at any financial institution: (1) in the name of Mr. Saviano or any Defendant; (2) that Mr. Saviano had – or any Defendant has - signatory authority or a beneficial interest; (3) that Mr. Saviano or any Defendant directly or indirectly controls, owns or manages; (4) held for the benefit of any Defendant, including through corporations, trusts, partnerships, agents, nominees, friends or relatives; or (5) which are traceable to funds and assets, wherever located, belonging to the victims of the securities law violations alleged in the SEC's complaint.

      D.

Any Defendant, and their agents, servants, employees, attorneys, depositories, banks, and those persons in active concert or participation with any one or more of them, and each of them, who receive actual notice of this Order or of the terms of the asset freeze provisions contained herein, by personal service, mail, facsimile transmission, email, or otherwise, is hereby restrained from, directly or indirectly, transferring, selling, encumbering, receiving, concealing, changing, pledging, hypothecating, assigning, liquidating, incurring debt upon, or otherwise disposing of, or withdrawing, any funds or assets, that constitute investor funds or any accounts or property into which investor funds were deposited or invested.

      E.

Any Defendant, and their agents, servants, employees, attorneys, depositories, banks, and those

persons in active concert or participation with any one or more of them, and each of them, who receive actual notice of this Order or of the terms of the asset freeze provisions contained herein, by personal service, mail, facsimile transmission, email, or otherwise, are hereby restrained from opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Defendant or Mr. Saviano, or subject to access by them, without providing the SEC prior notice and an opportunity to inspect the contents in order to determine whether they contain assets subject to this Order.

      F.

Any bank, financial or brokerage institution or other person or entity holding any such funds or anything else of value, in the name of, for the benefit of, or under the control of any Defendant or Mr. Saviano, or any account holding investor funds wherever located, and that receives actual notice of this Order or of the terms of the asset freeze provisions contained herein, by personal service, mail, email, facsimile transmission or otherwise, shall hold and retain within its control and prohibit the withdrawal, removal, transfer, disposition, pledge, encumbrance, assignment, set off, sale, liquidation, dissipation, concealment, or other disposal of any such funds, assets or property belonging to any Defendant or Mr. Saviano, or in which any Defendant has a beneficial interest, wherever located and held in whatever name.

      G.

Assets covered by this order include, but are not limited to, any holdings in the following accounts:

| BROKERAGE FIRM | ACCOUNT NUMBER | ACCOUNT HOLDER |
|---|---|---|
| Bank of America, N.A. | An account ending in 0602 | Palmetto Investments, LLC |
| Bank of America, N.A. | An account ending in 4850 | Vincent James Saviano |
| Bank of America, N.A. | An account ending in | Vincent James Saviano |

| BROKERAGE FIRM | ACCOUNT NUMBER | ACCOUNT HOLDER |
|---|---|---|
| | 9602 | |
| Scottrade Financial Services, Inc. | An account ending in 0067 | Palmetto Investments, LLC |
| Scottrade Financial Services, Inc. | An account ending in 0219 | Vincent James Saviano |
| Scottrade Financial Services, Inc. | An account ending in 3346 | Vincent James Saviano |
| Scottrade Financial Services, Inc. | An account ending in 1180 | Vincent James Saviano |
| TD Ameritrade, Inc. | An account ending in 8979 | Palmetto Investments, LLC |
| TD Ameritrade, Inc. | An account ending in 6150 | Vincent James Saviano (joint) |

H.

To facilitate this asset freeze, within 24 hours of receiving a copy of this order, each Defendant shall identify with specificity to the SEC all accounts, including bank accounts, brokerage accounts, retirement accounts, and/or trust accounts, in which that Defendant has an ownership or beneficial interest.

I.

This **Order shall expire on October 23, 2014,** unless otherwise ordered by this Court. Plaintiff shall call and request that this matter be set for a hearing, to be held **no later than seven days after written notice to the adverse party.**

J.

Pursuant to Rule 65(b)(4) of the Federal Rules of Civil Procedure, on 2 days' notice to Plaintiff SEC, Defendants may appear and move to dissolve or modify this Order.

## II.
## ACCOUNTING

**IT IS HEREBY FURTHER ORDERED** that within 5 calendar days of receiving a copy of this Order, each Defendant shall each make a sworn accounting to this Court in the

manner set forth below.  The sworn accounting shall cover the period from January 1, 2010 to the present.

A.    The sworn accounting shall reflect (1) all assets, funds and property received, directly or indirectly, from anyone who invested in, provided loans to, or otherwise gave, directly or indirectly, assets, funds or property to Defendants; (2) the amount of such funds or value of such assets; (3) the location of where such funds were put and for each location provide the name and address of the bank or other financial institution, the account name, the account number and the approximate date on which the funds were placed at the location; (4) the uses to which such funds were put; and (5) the amounts of any remaining assets or funds described in Section I of this Order and their location and for each location provide the name and address of the bank or other financial institution, the account name, the account number and the approximate date on which the funds were placed at the location.

B.    For each Defendant, the sworn accounting shall further reflect all assets and liabilities, wherever such assets and liabilities are located. For each such asset and liability, the accounting shall include: (1) a description of the asset or liability; (2) the amount or value or the asset or liability; (3) the location of the asset or liability, including when appropriate the name and address of the bank or other financial institution in which the asset or liability is located, the account name, and the account number; (4) the date the asset was acquired or the date the liability was incurred; and (5) whether the asset is encumbered and, if so, the nature of the encumbrance, including the identity of the creditor or lien-holder.

**III.**
**EXPEDITED DISCOVERY**

**IT IS HEREBY FURTHER ORDERED** that:

A.      Upon entry of this Order, the SEC may take depositions upon oral examination of parties and non-parties subject to 3 calendar days notice. All parties shall comply with the provisions of Rule 45 of the Federal Rules of Civil Procedure regarding issuance and service of subpoenas and documents sought from nonparties, and such nonparties shall be subject to at least 3 calendar days notice. Parties failing to appear for a properly noticed deposition shall be prohibited from introducing evidence at a hearing on the SEC's request for a preliminary injunction.

B.      Upon entry of this Order, the SEC shall be entitled to serve requests for the production of documents, requests for admissions, and interrogatories. Absent agreement of the parties or an order of this Court, Defendants shall respond to such discovery requests and produce responsive documents within 3 calendar days of service.

C.      Service of discovery requests shall be sufficient if made upon counsel of record or, if there is no counsel of record, upon the party itself, by both email and overnight courier delivery. All responses to the SEC's discovery, all discovery and pleadings, and all information to which the SEC is entitled pursuant to the terms of this Order shall be delivered to Timothy S. Leiman, Securities and Exchange Commission, Chicago Regional Office, by email (leimant@sec.gov) or by overnight or messenger courier delivery (175 W. Jackson Blvd., Suite 900, Chicago, Illinois 60604, 312-353-5213).

D.      Should Defendants fail to respond to a request for admission within 5 calendar days of service, that request may be deemed admitted for all purposes in this action.

E.     Should a Defendant fail to respond to an interrogatory within 5 calendar days of service, that party may be prohibited from introducing any evidence concerning the subject of the interrogatory for any purpose in this action.

F.     Should a Defendant fail to produce a responsive document within 5 calendar days of service, that party may be prohibited from introducing the withheld document for any purpose in this action.

G.     Depositions may be taken by telephone or other remote electronic means.

H.     Depositions taken pursuant to this Order shall not impact the number of depositions the SEC is may take in regular, non-expedited discovery.

I.     Interrogatories issued pursuant to this Order shall not impact the number of interrogatories the SEC is may issue in regular, non-expedited discovery.

## IV.
## ORDER PROHIBITING DESTRUCTION OF RECORDS

**IT IS HEREBY FURTHER ORDERED** that:

A.     Defendants, and all of their agents, servants, employees, attorneys, depositories, banks, and those persons in active concert or participation with any of them, are restrained and enjoined from, directly or indirectly, destroying, mutilating, concealing, altering, disposing of, or otherwise rendering illegible in any manner, any of the books, records, documents, correspondence, ledgers, accounts, financial transactions, statements, electronic files, computers, or any other property or data of any kind, and wherever located or stored: (1) pertaining in any way to any matter described in the complaint, or any

amendment thereto, filed by the Commission in this action; or (2) that were created, modified or accessed by Defendants or Mr. Saviano. (These documents and data are collectively referred to here as "Evidence").

B.     Such Evidence include both "hard copy" versions and electronically-stored information in Defendants' possession, custody or control, including text files, data compilations, word processing documents, spreadsheets, e-mail, voicemail, data bases, calendars and scheduling information, log, file fragments and backup files, letters, instant messages, memoranda, notes, drawings, designs, correspondence or communication of any kind. Evidence that is stored electronically may be maintained on shared network files, computer hard drives, servers, DVDs, CD-ROMs, flash drives, thumb drives, laptops, digital recorders, netbooks, PDA, or other handheld/ smartphone devices.

C.     The obligations set forth in this Section include an obligation to provide notice to all Defendants' employees, custodians, agents, or contractors who may be in possession of Evidence. This duty also extends to the preservation and retention of Evidence in the possession or custody of third-parties, such as an internet service provider or a cloud computing provider, if such Evidence is within Defendants' control.

D.     Defendants are ordered to act affirmatively to prevent the destruction of Evidence. This duty may necessitate: (1) quarantining certain Evidence to avoid its destruction or alteration; or (2) discontinuing the recycling of backup tapes or other storage media, and the deletion of emails, "trash," "recycling," "drafts," "sent," or "archived" folders.

E.     Defendants are directed not to run or install any drive cleaning, wiping, encrypting, or defragmenting software on hard disks of computers that may contain Evidence.

## V.
## MEANS OF SERVICE

**IT IS HEREBY FURTHER ORDERED** that service of any notices or other documents required or permitted by this Order may be accomplished by any means, including, but not limited to fax, email, overnight courier, personal delivery, or U.S. mail.

## VI.
## ORDER APPOINTING RECEIVER FOR PALMETTO INVESTMENTS, LLC

**IT IS HEREBY FURTHER ORDERED** that this Court appoints a Receiver to take exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of Defendant Palmetto. By Affidavit to the Court, Plaintiff SEC shall identify a candidate for receiver (the "Receiver") for Palmetto no later than November 6, 2014. Upon review of this submission, this Court will formally appoint an individual as Receiver to serve without bond under the following conditions:

A.     Receivership Asset Freeze

Except as otherwise specified herein, all Receivership Assets and Recoverable Assets (as defined below) are frozen until further order of this Court.  Accordingly, all persons and entities with direct or indirect control over any Receivership Assets and/or any Recoverable Assets, other than the Receiver, are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such assets.  This freeze shall include, but not be limited to, Receivership Assets and/or Recoverable Assets that are on deposit with financial institutions such as banks, brokerage firms and mutual funds.

11

B.    General Powers and Duties of Receiver

1.    The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers and general and limited partners of Palmetto under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Fed.R.Civ.P. 66.

2.    Any trustees, directors, officers, managers, employees, investment advisors, accountants, attorneys and other agents of Palmetto are hereby dismissed and the powers of any general partners, directors and/or managers are hereby suspended.  Such persons and entities shall have no authority with respect to Palmetto's operations or assets, except to the extent as may hereafter be expressly granted by the Receiver.  The Receiver shall assume and control the operation of Palmetto and shall pursue and preserve all of their claims.

3.    No person holding or claiming any position of any sort with Palmetto shall possess any authority to act by or on behalf of Palmetto.

4.    Subject to the specific provisions in Sections C through N, below, the Receiver shall have the following general powers and duties:

a.    To use reasonable efforts to determine the nature, location and value of all property interests of Palmetto, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which Palmetto own, possess, have a beneficial interest in, or control directly or indirectly ("Receivership Property" or, collectively, the "Receivership Estate");

b.    To take custody, control and possession of all Receivership Property and records relevant thereto from Palmetto; to sue for and collect,

12

recover, receive and take into possession from third parties all Receivership Property and records relevant thereto;

c.    To manage, control, operate and maintain the Receivership Estate and hold in his possession, custody and control all Receivership Property, pending further Order of this Court;

d.    To use Receivership Property for the benefit of the Receivership Estate, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

e.    To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, trustees and agents of Palmetto;

f.    To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders or auctioneers;

g.    To take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property;

h.    The Receiver is authorized to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure;

i.    With leave of the Court, to bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver;

j.    To pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estate; and,

k.    To take such other action as may be approved by this Court.

C.    <u>Access to Information</u>

1.    Palmetto's past and/or present officers, directors, agents, attorneys, managers, shareholders, employees, accountants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities shall answer under oath to

13

the Receiver all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of Palmetto, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to Palmetto.  In the event that the Receiver deems it necessary to require the appearance of the aforementioned persons or entities, the Receiver shall make its discovery requests in accordance with the Federal Rules of Civil Procedure.

2.       The Receiver may issue subpoenas to compel testimony of persons or production of records, consistent with the Federal Rules of Civil Procedure and applicable Local Rules -  except for the provisions of Fed.R.Civ.P. 26(d)(1) - concerning any subject matter within the powers and duties granted by this Order.

3.       Palmetto is required to assist the Receiver in fulfilling his duties and obligations.  As such, it must respond promptly and truthfully to all requests for information and documents from the Receiver.

D.       <u>Access to Books, Records and Accounts</u>

1.       The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books and records and all other documents or instruments relating to Palmetto.  All persons and entities having control, custody or possession of any Receivership Property are hereby directed to turn such property over to the Receiver.

2.       Palmetto, as well as its agents, servants, employees, attorneys, any persons acting for or on behalf of Palmetto, and any persons receiving notice of this Order by personal service, facsimile transmission or otherwise, having possession of the property, business, books, records, accounts or assets of Palmetto are hereby directed to deliver the

14

same to the Receiver, his agents and/or employees.

3.     All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, Palmetto that receive actual notice of this Order by personal service, facsimile transmission or otherwise shall:

a.     Not liquidate, transfer, sell, convey or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of Palmetto except upon instructions from the Receiver;

b.     Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

c.     Within five (5) business days of receipt of that notice, file with the Court and serve on the Receiver and counsel for the Commission a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and,

d.     Cooperate expeditiously in providing information and transferring funds, assets and accounts to the Receiver or at the direction of the Receiver.

E.     Access to Real and Personal Property

1.     The Receiver is authorized to take immediate possession of all personal property of Palmetto, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies and equipment.

2.     The Receiver is authorized to take immediate possession of all real property

of Palmetto, wherever located, including but not limited to all ownership and leasehold interests and fixtures. Upon receiving actual notice of this Order by personal service, facsimile transmission or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing or erasing anything on such premises.

3.      In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above. The Receiver shall have exclusive control of the keys. Palmetto, or any other person acting or purporting to act on its behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

4.      The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of Palmetto, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

5.      Upon the request of the Receiver, the United States Marshal Service, in any judicial district, is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody and control of, or identify the location of, any assets, records or other materials belonging to the Receivership Estate.

F.      Notice to Third Parties

1.      The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers and general

16

and limited partners of Palmetto, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

2.      All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to Palmetto shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if Palmetto had received such payment.

3.      In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estate.   All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the SEC.

4.      The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations or activities of Palmetto (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, Palmetto.  The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail.  Palmetto shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver.  The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mail box, depository, business or service, or mail courier or delivery service, hired, rented or used by Palmetto.  Palmetto shall not open a new mailbox, or take

17

any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository or courier service.

5.      Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to Palmetto shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

6.      The Receiver is authorized to assert, prosecute and/or negotiate any claim under any insurance policy held by or issued on behalf of Palmetto, or its officers, directors, agents, employees or trustees, and to take any and all appropriate steps in connection with such policies.

G.      <u>Injunction against Interference with Receiver</u>

1.      Palmetto and all persons receiving notice of this Order by personal service, facsimile or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

      a.      Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;

      b.      Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information;

      c.      Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Property, enforcing judgments,

18

assessments or claims against any Receivership Property or Palmetto, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by Palmetto or which otherwise affects any Receivership Property; or,

d.    Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estate.

2.    Palmetto shall cooperate with and assist the Receiver in the performance of his duties.

3.    The Receiver shall promptly notify the Court and SEC counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

H.    Stay of Litigation

1.    As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the Commission related to the above-captioned enforcement action, are stayed until further Order of this Court:

> All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) Palmetto, including subsidiaries and partnerships; or, (d) any of Palmetto's past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

2.    The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

3.    All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court.   Further, as to a cause of action accrued or accruing in favor of Palmetto against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

I.    Managing Assets

1.    For the Receivership Estate, the Receiver shall establish a custodial account at a federally insured bank to receive and hold all cash equivalent Receivership Property (the "Receivership Funds").

2.      The Receiver's deposit account shall be entitled "Receiver's Account, Estate of Palmetto Investments, LLC" together with the name of the action.

3.      The Receiver may, without further Order of this Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property.

4.      Subject to paragraph I.5., immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estate, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property.

5.      Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estate.

6.      The Receiver is authorized to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Estate, including making legally required payments to creditors, employees, and agents of the Receivership Estate and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

7.      The Receiver shall take all necessary steps to enable the Receivership Funds

21

to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of

Section 468B of the Internal Revenue Code and of the regulations, when applicable,

whether proposed, temporary or final, or pronouncements thereunder, including the filing of

the elections and statements contemplated by those provisions.  The Receiver shall be

designated the administrator of the Settlement Fund, pursuant to Treas. Reg. § 1.468B-

2(k)(3)(i), and shall satisfy the administrative requirements imposed by Treas. Reg. §

1.468B-2, including but not limited to (a) obtaining a taxpayer identification number, (b)

timely filing applicable federal, state, and local tax returns and paying taxes reported

thereon, and (c) satisfying any information, reporting or withholding requirements imposed

on distributions from the Settlement Fund.  The Receiver shall cause the Settlement Fund to

pay taxes in a manner consistent with treatment of the Settlement Fund as a "Qualified

Settlement Fund."  Palmetto shall cooperate with the Receiver in fulfilling the Settlement

Funds' obligations under Treas. Reg. § 1.468B-2.

       J.    <u>Investigate and Prosecute Claims</u>

       1.    Subject to the requirement, in Section H above, that leave of this Court is

required to resume or commence certain litigation, the Receiver is authorized, empowered

and directed to investigate, prosecute, defend, intervene in or otherwise participate in,

compromise, and/or adjust actions in any state, federal or foreign court or proceeding of

any kind as may in his discretion, and in consultation with SEC counsel, be advisable or

proper to recover and/or conserve Receivership Property.

       2.    Subject to his obligation to expend receivership funds in a reasonable and

cost-effective manner, the Receiver is authorized, empowered and directed to investigate the

manner in which the financial and business affairs of Palmetto were conducted and (after

obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit

and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate;

the Receiver may seek, among other legal and equitable relief, the imposition of constructive

trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission

and restitution, collection of debts, and such other relief from this Court as may be

necessary to enforce this Order.  Where appropriate, the Receiver should provide prior

notice to Counsel for the Commission before commencing investigations and/or actions.

  3. The Receiver hereby holds, and is therefore empowered to waive, all

privileges, including the attorney-client privilege, held by Palmetto.

  4. The receiver has a continuing duty to ensure that there are no conflicts of

interest between the Receiver, his Retained Personnel (as that term is defined below), and

the Receivership Estate.

  K. <u>Bankruptcy Filing</u>

  1. The Receiver may seek authorization of this Court to file voluntary petitions

for relief under Title 11 of the United States Code (the "Bankruptcy Code") for Palmetto.  If

Palmetto is placed in bankruptcy proceedings, the Receiver may become, and may be

empowered to operate the Receivership Estate as a debtor in possession.  In such a

situation, the Receiver shall have all of the powers and duties as provided a debtor in

possession under the Bankruptcy Code to the exclusion of any other person or entity.

Pursuant to Paragraph 4 above, the Receiver is vested with management authority for

Palmetto and may therefore file and manage a Chapter 11 petition.

  2. The provisions of Section H above bar any person or entity, other than the

Receiver, from placing Palmetto in bankruptcy proceedings.

      L.     <u>Liability of Receiver</u>

1.     Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

2.     The Receiver and his agents, acting within scope of such agency ("Retained Personnel") are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel, nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

3.     This Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

4.     In the event the Receiver decides to resign, the Receiver shall first give written notice to the Commission's counsel of record and the Court of its intention, and the resignation shall not be effective until the Court appoints a successor. The Receiver shall then follow such instructions as the Court may provide.

      M.     <u>Recommendations and Reports</u>

1.     The Receiver is authorized, empowered and directed to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and

recoverable Receivership Property (the "Liquidation Plan").

2.     Within ninety (90) days of receiving this Order, the Receiver shall file the Liquidation Plan in the above-captioned action, with service copies to counsel of record.

3.     Within thirty (30) days after the end of each calendar quarter, the Receiver shall file and serve a full report and accounting of the Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Property, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estate.

4.     The Quarterly Status Report shall contain the following:

    a.     A summary of the operations of the Receiver;

    b.     The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

    c.     A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

    d.     A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

    e.     A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

    f.     A list of all known creditors with their addresses and the amounts of their claims;

    g.     The status of Creditor Claims Proceedings, after such proceedings

25

have been commenced; and

     h.     The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

5.     On the request of the Commission, the Receiver shall provide the Commission with any documentation that the Commission deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the Commission's mission.

N.     <u>Fees, Expenses and Accountings</u>

1.     Subject to paragraphs N.2. through N.8 immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership. Further, prior Court approval is not required for payments of applicable federal, state or local taxes.

2.     Subject to paragraph N.3. immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order.  The Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

3.     The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estate as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver.  Such compensation shall require the prior approval of the Court.

4.     Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense

reimbursement from the Receivership Estate (the "Quarterly Fee Applications"). At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the SEC a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff.

5.      All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership. At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

6.      Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court. The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

7.      Each Quarterly Fee Application shall:

    a.      Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

    b.      Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

8.      At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by SEC staff, as well as the Receiver's final application for compensation and expense reimbursement.

**IT IS SO ORDERED this 9ᵗʰ day of October, 2014 at 2:50 p.m. in Detroit, Michigan.**

s/Marianne O. Battani
MARIANNE O. BATTANI
United States District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on October 9, 2014.

s/ Kay Doaks
Case Manager